1

**O**

2

3

4

5

6

7

# United States District Court
# Central District of California

10

| | |
|---|---|
| SEMPRA ENERGY, *et al.*, | Case No. 2:19-cv-03340-ODW (JPRx) |
| Plaintiffs, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [88]** |
| ASSOCIATED ELECTRIC AND GAS INSURANCE SERVICES LIMITED, *et al.* | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Sempra and SoCal Gas face litigation for damages arising from natural gas leaks.  Plaintiffs sued several insurance companies for breach of their contractual obligations to defend or pay for the defense of those suits.  Pending before the Court is Defendant The Continental Insurance Company ("Continental")'s Motion for Summary Judgment ("Motion") for the right to control the defense.  (Mot. for Summ. J., ECF No. 88.)  On July 8, 2020, the Court had a video-conference hearing in which Continental and Plaintiffs were present.  For the following reasons, the Court **GRANTS** Continental's Motion.

## II.   BACKGROUND

Plaintiffs Sempra Energy ("Sempra") and Southern California Gas Company ("SoCal Gas"), a subsidiary of Sempra, filed the instant lawsuit against several insurance companies, including Continental.  (Notice of Removal Ex. 1 ("Compl.") ¶¶ 2–3, ECF No. 1-1.)

Since 1972, SoCal Gas has owned a natural gas storage facility in northwest Los Angeles.  (Def.'s Statement of Uncontroverted Facts ("DSUF") ¶ 11, ECF No. 88-2.)  On October 23, 2015, SoCal Gas discovered a gas leak at the facility.  (DSUF ¶ 12.)   Consequently, Plaintiffs faced lawsuits from over 36,000 individuals ("Individual Plaintiff Lawsuits"), firefighters who sustained damages while responding to the gas leak ("Firefighter Lawsuit"), real estate developers seeking damages for harm to property and loss of business ("Real Estate Lawsuit"), and the State of California for various code violations ("CA Lawsuit") (collectively, the "Underlying Lawsuits").  (DSUF ¶¶ 14, 17, 18, 20.)[1]  The parties dispute whether allegations of injuries in the complaints relate as far back as the 1970s.  (Pl.s' Disputes of the DSUF and Statement of Uncontroverted Facts ("PSUF") ¶ 57, ECF No. 100; Def.'s Response to PSUF ¶ 57, ECF No. 98-1.)  As early as 2016, SoCal Gas retained three law firms to defend against the lawsuits.  (DSUF ¶¶ 21, 24.)

On September 21, 2018, SoCal Gas notified Continental, successor of the Harbor Insurance Company, of the lawsuits and requested that they defend or pay for the defense of the lawsuits under the Harbor Policies.  (DSUF ¶ 30.)  Decades ago, the Harbor Insurance Company issued insurance policies to Pacific Lighting Corporation, predecessor in interest of Sempra, under two contracts: One from October 5, 1971 to September 1, 1974 ("First Policy") and a second from September 1, 1974 to

---

[1] Continental requests judicial notice of the dockets and fillings in these Underlying Lawsuits. (Reqs. for Judicial Notice, ECF Nos. 88-5, 98-4.)  These court records are proper subjects of judicial notice.  *See U.S. ex rel Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (stating the court "may take notice of proceedings [and related filings] in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").  Accordingly, the Court **GRANTS** the requests.

September 1, 1976 ("Second Policy").   (DSUF ¶¶ 1–2; Opp'n to Mot. ("Opp'n") 3, ECF No. 95; Compl. ¶¶ 2–3, ECF No. 1-1; DSUF Ex. A ("First Policy"), ECF No. 88-6; DSUF Ex. B ("Second Policy"), ECF No. 88-6.)  Those two policies (collectively, the "Harbor Policies") insured occurrences defined as "a series of accidents or events arising out of an initial accident or event or originating cause, including all resultant or concomitant losses."  (First Policy A 24; Second Policy B 22; DSUF ¶ 4.)  The Harbor Policies state that the insurer agrees to pay:

> on behalf of the insured all sums in excess of the insured's retention (hereinafter defined) which the insurer shall become obligated to pay: (A) by reason of the liability imposed by law (other than a workmen's compensation law or plan), or liability which is or may be assumed or imposed under contract, franchise warranty, conveyance or other agreement (oral or written, express or implied) for damages including damages for care and loss of services, **because of personal injury, including death** at any time resulting therefrom, sustained by any person or persons. . . . (C) by reason of the liability imposed by law upon the insured for **loss of or damage to or destruction of tangible property** of others (including but not limited to damage resulting from loss of use of said property damaged or destroyed and all other indirect or consequential damage for which legal liability exists in connection with such damage to or destruction of tangible property of others).

(First Policy A 21–22; Second Policy B 17–18; DSUF ¶ 4 (emphasis added).) Furthermore, the policies indicate that:

> [t]he **insured** shall have **control and charge** of any claim or suit or group of claims or suits resulting from a single occurrence and all litigation in respect thereto involving liability covered by this policy . . . However, in the event of an occurrence resulting in claims or suits in excess of the insured's retention, the **company** shall upon the written request of a duly authorized officer of the insured, take **full charge** or such investigation or litigation at its own cost and expense.

(First Policy A 25; Second Policy B 23–24; DSUF ¶¶ 5–6 (emphasis added).) According to the policies, expenses incurred during the investigation or litigation of claims would be paid in addition to the policy's limit.  (DSUF ¶ 7.)  Other terms of the policies require that the insured provide written notice of any insurable occurrence

1    within a reasonable time, forward any summons or complaints served and cooperate in

2    the defense of the suit.  (DSUF ¶¶ 9, 10.)

3            On January 23, 2019, Continental first responded to SoCal Gas's letter from

4    September.   (PSUF ¶ 60.)   On March 11, 2019, Continental requested defense

5    invoices and additional information about the claims and lawsuits.  (DSUF ¶ 32.)  The

6    next day, despite having collected questionnaire responses from all individual

7    plaintiffs since May 2017, SoCal Gas provided only the same two questionnaire

8    responses attached to its 2018 letter and did not produce any invoices.  (DSUF ¶¶ 22,

9    33.)   On March 26, 2019, Plaintiffs filed the instant lawsuit seeking damages for

10   Defendants' breach of their duties to defend the Underlying Lawsuits.  (*See* Compl.)

11   On April 24, 2019, AEGIS filed its answer alleging a number of affirmative defenses.

12   (AEGIS Answer, ECF No. 1-2.)   On May 2, 2019, Continental similarly filed its

13   answer and asserted affirmative defenses.  (Continental Answer, ECF No. 10.)

14           On July 26, 2019, Continental agreed to defend the suits against all individual

15   plaintiffs but reserved the rights to assert that: (1) No personal injury or property

16   damage occurred; (2) there was no "occurrence" (accident or event); (3) there was no

17   occurrence or event during the Harbor Policies' periods of coverage; (4) coverage is

18   barred by the policies' pollution and natural gas exclusion; and (5) there is no

19   coverage for punitive damages.  (PSUF ¶ 63; DSUF ¶ 36.)   Continental has since

20   waived the second and fourth reservations.  (DSUF ¶ 53; Decl. of John R. Fitzgerald

21   ("Fitzgerald Decl.") ¶ 40, ECF No. 88-3; Mot. 17.)  Continental also reserved the right

22   to be reimbursed for payments it did not owe under the policies.  (DSUF ¶ 37.)

23           On August 8, 2019, Continental paid over $1.6 million, about two months after

24   receiving the invoice.   (DSUF ¶ 46; Fitzgerald Decl. ¶ 44.)   On August 9, 2019,

25   Plaintiffs rejected Continental's attempt to gain control of the defense and replace

26   Plaintiffs' defense counsel.   (PSUF ¶ 65; DSUF ¶ 55.)   On September 5, 2019,

27   Continental received a second batch of defense invoices and paid over $1.5 million

28   about a month later in October 2019.  (DSUF ¶¶ 42, 46; Fitzgerald Decl. ¶¶ 43, 44.)

In December 2019, the third batch of defense invoices were sent and paid that month, bringing total defense invoice payments to over $8.2 million.  (Supp. Decl. of John R. Fitzgerald ¶ 12, ECF No. 98-3).

On October 23, 2019, Plaintiffs filed a motion to stay the case pending resolution of the Underlying Lawsuits.  (Mot. to Stay, ECF No. 73.)  The Court denied the motion because Plaintiffs sought to sever and stay only the affirmative defenses while permitting their claims to continue.  (Order Denying Stay, ECF No. 94.)

Now before the Court, Continental brings its Motion for Partial Summary Judgment seeking control of Plaintiffs' defense in the Underlying Lawsuits and enforcement of the duty to cooperate against SoCal Gas.  (*See* Mot.)[2]

### III.    LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues

---

[2] Plaintiffs object to certain statements in the DSUF and the Fitzgerald declaration.  (*See* Pls.' Evid. Objs., ECF No. 95-2.)  First, Plaintiffs argue that Exhibit C, the letter from Plaintiffs on September 21, 2018 is incomplete without the attachments.  Accordingly, the Court shall consider Exhibit C in its entirety, as it was tendered to Continental, with the attachments.  Next, Plaintiffs object to certain DSUFs and statements in the Fitzgerald declaration for lack of foundation.  Similarly, Continental objects to certain PSUFs as misleading or irrelevant.  (Def.'s Evid. Objs., ECF No. 98-6.)  The Court finds them unnecessary to rule on because the Court does not rely on the disputed evidence.  *See Smith v. Cty. of Humbolt*, 240 F. Supp. 2d 1109, 1115 (N.D. Cal. 2003).  To the extent the Court relies without discussion on such evidence, the Court **OVERRULES** the relevant objections.  *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1118–19 (E.D. Cal. 2006) ("[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself.").

1   of fact and defeat summary judgment.  *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d

2   730, 738 (9th Cir. 1979).  Moreover, though the Court may not weigh conflicting

3   evidence or make credibility determinations, there must be more than a mere scintilla

4   of contradictory evidence to survive summary judgment.  *Addisu v. Fred Meyer, Inc.*,

5   198 F.3d 1130, 1134 (9th Cir. 2000).

6        Once the moving party satisfies its burden, the nonmoving party cannot simply

7   rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a

8   material issue of fact precludes summary judgment.  *See Celotex Corp. v. Catrett*, 477

9   U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

10  U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*,

11  *Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  Nor will uncorroborated allegations and

12  "self-serving testimony" create a genuine issue of material fact.  *Villiarimo v. Aloha*

13  *Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  The court should grant

14  summary judgment against a party who fails to demonstrate facts sufficient to

15  establish an element essential to his case when that party will ultimately bear the

16  burden of proof at trial.  *See Celotex*, 477 U.S. at 322.

17       Pursuant to the Local Rules, parties moving for summary judgment must file a

18  proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should

19  set out "the material facts as to which the moving party contends there is no genuine

20  dispute."  C.D. Cal. L.R. 56-1.  A party opposing the motion must file a "Statement of

21  Genuine Disputes" setting forth all material facts as to which it contends there exists a

22  genuine dispute.  C.D. Cal. L.R. 56-2.  "[T]he Court may assume that material facts as

23  claimed and adequately supported by the moving party are admitted to exist without

24  controversy except to the extent that such material facts are (a) included in the

25  'Statement of Genuine Disputes' and (b) controverted by declaration or other written

26  evidence filed in opposition to the motion."  C.D. Cal. L.R. 56-3.

27

28

## IV.   DISCUSSION

Continental moves for partial summary judgment and seeks a declaration that the terms of the Harbor Policies permit Continental to control the defense of any the Underlying Lawsuits.[3]   (*See* Mot.)   Plaintiffs oppose this motion on several grounds, including that: (1) The insurance policies do not in fact grant Continental the right to control the defense; (2) Continental is in breach of the insurance agreement and can no longer benefit from the control provision; and (3) Continental's reservation of rights clause creates a conflict of interest.   (*See* Opp'n.)   The Court addresses each of Plaintiff's arguments in turn.

### A.   Policy Terms

Plaintiffs assert that the policies' terms do not indicate that Continental shall have control over the defense of the Underlying Lawsuits, but only that it shall cover the cost of the defense.   (*See* Opp'n 15–17.)

As the Ninth Circuit instructs, when interpreting a contract, courts shall "give effect to the mutual intention of the parties as it existed at the time of contracting." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1042 (9th Cir. 2020) (citing Cal. Civ. Code § 1636); *MacKinnon v. Truck Ins. Exch.*, 31 Cal. 4th 635, 647 (2003).   Courts shall utilize the "language of a contract [ ]to govern its interpretation" and ascertain the parties' intentions "from the [written contract] alone . . . ."   Cal. Civ. Code §§ 1638–39.   "The whole of a contract is to be taken together, so as to give effect to every part . . . ."   Cal. Civ. Code § 1641; *Int'l Bhd. of Teamsters*, 957 F.3d at

---

[3]Alternatively, Continental asserts that Plaintiff's conduct serves as an express or implied withdrawal of Plaintiffs' request to defend.   (Reply 4–6.)   In its opposition, Plaintiffs state "[b]ecause Continental breached, there is no present demand that Continental assume its duty to defend, and Continental knows this."   (Opp'n 1 (emphasis omitted).)   As the Court emphasized at the hearing, waivers of duty need to be unequivocal.   *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 80 Cal. App. 4th 1165, 1188 (2000) ("Waiver requires the intentional relinquishment of a known right upon knowledge of the facts. The burden is on the party claiming a waiver of right to prove it by clear and convincing evidence that does not leave the matter to speculation.")   Accordingly, the Court does not find that Plaintiffs have waived their request to defend.

1042.  Importantly, "[t]he words of a contract are to be understood in their ordinary and popular sense."  Cal. Civ. Code § 1644; *MacKinnon*, 31 Cal. 4th at 648.

Here, Plaintiffs assert that the insurance agreement does not permit Continental to control the defense.  (Opp'n 15–17.)  The Policies state that "the insured [Plaintiffs] **shall have control and charge** of any claim or suit . . . however, in the event of an occurrence resulting in claims or suits in excess of the insured's retention, the company [Continental] **shall** . . . **take full charge** of such investigation or litigation at its own cost and expense."  (DSUF ¶¶ 5, 6 (emphasis added).)  Plaintiffs assert that because this clause vests control and charge to them while the second clause only vests charge to Continental, the Harbor Policies cannot be interpreted to grant control of the litigation to Continental.  (Opp'n 15.)  The Court finds that isolating the words in the clause distorts the plain meaning.  The clause clearly intends to vest in the company, here Continental, "full charge" of the defense, specifying that the company shall manage the investigation and litigation.  Plaintiffs assert that such an interpretation renders the term "control" in the first clause surplusage.  (Opp'n 15–16.)  Not so.  The first clause grants control and charge to the Plaintiffs while the second clause grants full charge, or greater charge than that granted to Plaintiffs in the first clause, to dictate the investigation and litigation.

The California appellate court in *ACL Technologies, Inc. v. Northbrook Property & Casualty Ins. Co.*, to which Plaintiffs cite, states that "meanings of individual words [may] overlap [but should not be interpreted to] add nothing in the context in which they are used."  17 Cal. App. 4th 1773, 1787 (1993) (comparing "sudden" and "unexpected").  Per the Court's interpretation of the clause, "control" seems to convey a sense of regulation as in to dictate the outer bounds of the underlying claims, while "charge" seems to convey the chief effort as in to be in charge or take charge.  These interpretations comport with the clause holistically in which Continental "takes full charge" only when the claims are in excess of the Plaintiffs' retention and beyond their control.  In the interpretation of the clause

above, "control" and "charge" overlap in meaning, yet each still add to the context. Thus, the Court finds that the clause grants Continental the right to control the defense.

Additionally, the Court is not be persuaded by the Plaintiffs' argument that the language of the clause is ambiguous.  (Opp'n 16.)  A provision is ambiguous when it is capable of two or more reasonable constructions, but the policy language must be "construed in the context of the instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract."  *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999); *see* Cal. Civ. Code § 1641; *MacKinnon*, 31 Cal. 4th at 648.  As previously discussed, the Court agrees with Continental that the clause clearly intends to grant it charge of the investigation and litigation when it must take financial responsibility for the costs.  (*See* Reply 4, ECF No. 98.)  Thus, the clause is not capable of more than one reasonable construction when interpreted in the context of the entire agreement.   Accordingly, the Court finds that the clause is not ambiguous.

**B.     Breach of Duty**

Plaintiffs argue that even if the Harbor Policies grant Continental the right to control the defense of the Underlying Lawsuits, it may not enforce this right because it is in breach of its duty to defend under the Harbor Policies.  (Opp'n 6–14.)  Plaintiffs contend that any financial resources they may have accepted from Continental were accepted to mitigate damages, not to waive Continental's breach.  (Opp'n 2, 15.)

*1.     Duty to Defend*

Plaintiffs allege that per the Harbor Policies, Continental was bound by an expansive duty to defend the Underlying Lawsuits.  (Opp'n 6–8.)  The parties do not contest the applicability of the duty, but they do dispute its scope.  Continental asserts that it is accountable for only the Individual Plaintiff Lawsuits, while Plaintiffs contend that Continental must defend all the Underlying Lawsuits.  (Opp'n 6–10; Reply 8–9.)

An insurer's duty to defend is broader than its duty to indemnify and may apply even in an action where no damages are ultimately awarded. *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). An insurer must defend its insured against claims that create a potential for indemnity under the policy. *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 295 (1993). Even if the precise causes of action pled by the third-party complaint fall outside of the policy coverage, the insurer's duty to defend may not be excused "where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability." *Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) (citing *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275–76 (1966)). The California Supreme Court summarized general principles on this issue:

> If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage. On the other hand, if, as a matter of law, neither the complaint or the known extrinsic facts indicate any basis for potential coverage, the duty to defend does not arise in the first instance.

*Id.* Claims are also potentially covered where they "possibly embrace any triggering harm of the specified sort within the policy period caused by an included occurrence." *Id.* Thus, the Court here assesses whether there are facts known or discovered by Continental that suggest the claims in the Underlying Lawsuits "embrace" any harm covered in the Harbor Policies.

The Harbor Policies cover occurrences defined as "a series of accidents or events arising out of an initial accident or event or originating cause, including all resultant or concomitant losses" that lead to personal injury or property damages in excess of the retention amount. (DSUF ¶ 4.) Here, Plaintiffs faced lawsuits filed by over 36,000 individuals for personal injury, firefighters who sustained damages while responding to the gas leak, real estate developers seeking damages for harm to property and loss of business, and the State of California for various code violations.

1  (DSUF ¶¶ 14, 17, 18, 20.)  Each lawsuit alleges that the occurrence of the natural gas
2  leak gave rise to personal injury or property damage.  However, the parties dispute
3  whether the harm occurred within the coverage period.  Specifically, Continental
4  asserts that the event and the resulting loss must occur within the policy period, here,
5  before September 1, 1976, and the allegations in the complaints do not implicate
6  damages during that time of coverage.  (Reply 8.)  On the other hand, Plaintiffs
7  contend that allegations in a representative sample of the complaints mention harm
8  from leaks as early as the 1970s.  (Opp'n 6–8, 10; PSUF ¶¶ 17–20.)

9        The Court need not determine whether the Underlying Lawsuits are in fact
10  covered by the policies to determine whether Continental's duty to defend was
11  triggered.  The Court must simply determine if the Underlying Lawsuits allege or can
12  be amended to allege harms covered by the Harbor Policies.  Plaintiffs argue that the
13  underlying plaintiffs assert poor operating and maintenance, slow leaks, and a "series
14  of leaks" all arising from the creation of the Aliso Canyon storage facility in 1972.
15  (Opp'n 11–12.)  Thus, Continental has not met its burden to demonstrate that there is
16  no possible scenario in which the claims in the Underlying Lawsuits fall within the
17  Harbor Policies.  *Hanover Ins. Co. v. Paul M. Zagaris, Inc.*, 714 F. App'x 735, 737
18  (9th Cir. 2018) (affirming the district court which held that that the duty to defend
19  included all claims in the mixed case).

20        Continental argues that Plaintiffs fail to explain how defending all the
21  Underlying Lawsuits is reasonable and necessary for the defense of the Individual
22  Plaintiffs Lawsuits.  (Reply 10.)  However, Plaintiffs do not bear the burden of
23  establishing such a necessity.  *See Buss v. Super. Ct.*, 16 Cal. 4th 35, 53 (1997)
24  (holding that in a "mixed" action, the insurer bears the burden of proof on which
25  claims have no potential for coverage when seeking reimbursement of costs).
26  Plaintiffs must simply establish that the Underlying Lawsuits potentially embrace a
27  harm covered by the Harbor Policies, which they have done as previously discussed.
28

Plaintiffs sufficiently establish that there are overlapping issues embracing a covered harm.  (Opp'n 11.)

Alternatively, even if certain cases in the Underlying Lawsuits do not have potential for coverage, Continental owes a duty to defend the Underlying Lawsuits in their entirely.  In *Buss v. Superior Court*, the California Supreme Court addressed this situation after the insured sought to enforce a duty to defend claims with potential for coverage along with those that had no potential for coverage, a "mixed" case.  16 Cal. 4th at 48–49.  The court held that the insurer must defend the entire "mixed" action "because the contractual duty to defend the potentially covered claims immediately and meaningfully implies the prophylactic duty to defend entirely, without pausing to parse among potentially covered and clearly uncovered claims."  *Scottsdale Ins. Co.*, 36 Cal. 4th at 658 (internal quotation marks omitted) (discussing and quoting *Buss*); *see Liberty Mut. Ins. Co. v. Blatt*, 357 F. App'x 776, 777 (9th Cir. 2009) ("In a 'mixed' action, where some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend the action in its entirety.").  Continental protests that the Underlying Lawsuits cannot be considered a "mixed case" based on statements from only five or eight individual plaintiffs alleging harm dating back to the 1970s.  (Reply 9.)  Yet, Continental cites no authority for that proposition.  As stated in *Buss*, the duty to defend is immediate and consequently, all encompassing. Thus, the Court finds that Continental's duty to defend extends to the potential and non-potential cases; all the Underlying Lawsuits.  *Liberty Mut. Ins. Co.*, 357 F. App'x at 777 (affirming the district court decision that the insurer's duty to defend covered potential and non-potential claims).

Given that the duty to defend is broader than the duty to indemnify and applies even in an action where no damages are ultimately awarded, the Court finds that Continental has a duty to defend the Underlying Lawsuits.  However, as discussed in *Buss*, this shall not restrict Continental from recovering undue costs and expenses in the future.

2.   *Breach*

Plaintiffs assert that Continental is in breach because it failed to defend the Underlying Lawsuits in a timely manner and in their entirety, and therefore, forfeits the right to control the defense of the action.  (Opp'n 8–14.)  Continental anticipates this argument and asserts that Plaintiffs themselves have breached their obligations per the Harbor Policies.  (Mot. 22.)  Specifically, Continental argues that Plaintiffs failed to provide sufficient notice of the Underlying Lawsuits and failed to cooperate.[45] (Mot. 14, 22.)  "Breach of duty to defend also results in the insurer's forfeiture of the right to control defense of the action."  *Intergulf Dev. LLC v. Super. Ct.*, 183 Cal. App. 4th 16, 20 (2010).  The Court addresses whether either party breached.

*a.  Duty to Defend Immediately and Notice Required*

Plaintiffs argue that Continental breached its obligations under the Harbor Policies by failing to immediately agree to defend the Underlying Lawsuits.  (Opp'n 8, 10.)   Continental argues that it is Plaintiffs who are in breach for violating California Civil Code Section 2860(b) by failing to provide timely notice of "all matters relating to the action."  (Reply 5.)  The contractual duty to defend the claims is triggered immediately upon notice.  *Scottsdale Ins. Co.*, 36 Cal. 4th at 658 (discussing and quoting *Buss*).  "The temporal limits of the insurer's duty to defend [fall] between tender of the defense and conclusion of the action."  *OneBeacon Am. Ins. Co. v. Fireman's Fund Ins. Co.*, 175 Cal. App. 4th 183, 200 (2009).  The duty to defend ordinarily arises after receipt of an actual tender of defense; however, notice of the

---

[4]  Plaintiffs attempt to distort Continental's argument by asserting that it inappropriately seeks specific performance—to compel Plaintiffs to cooperate—where no claim permits such a remedy.  (Opp'n 21–25; Reply 6.)   Plaintiffs assert that they are not obligated to cooperate because Continental breached its duty to defend; however, Plaintiffs support this proposition with cases in which the insurer denied coverage of the claims.  (Opp'n 21.)  Continental has taken no such action here.  In fact, Continental has agreed to defend the Underlying Lawsuits in part and has provided $8.2 million to-date for that defense.  (Mot. 21–23; Reply 1.)

[5]  Furthermore, the Court need not discuss Continental's argument that the Plaintiffs' breach of their duty to cooperate excused its own breach, because the Court does not find Continental in breach of any duty.  On the other hand, per the Harbor Policies, Plaintiffs are obligated to cooperate with Continental in the defense of the underlying claims it controls.  (DSUF ¶ 10; PSUF ¶ 10.)

summons or complaint of the underlying action may suffice as constructive notice.  *Id.*  Crucially, the insured must make a "showing of potential for coverage" to trigger the duty.  *The Hous. Grp. v. PMA Capital Ins. Co.*, 193 Cal. App. 4th 1150, 1156 (2011).

Aside from the caselaw requiring at least constructive notice, the Harbor Policies require the Plaintiffs to provide written notice "upon learning of an occurrence."  (DSUF ¶ 9; PSUF ¶ 9.)  On September 21, 2018, SoCal Gas sent a letter informing Continental of some of the Underlying Lawsuits and requesting that it defend or pay for the defense of the lawsuits per the Harbor Policies.  (DSUF ¶ 30; PSUF ¶ 30.)  The letter stated that Plaintiffs faced 380 lawsuits with over 47,000 plaintiffs, some of whom indicated in a questionnaire "that they were injured or damaged from prior releases or discharges at Aliso Canyon . . . potentially dating back to 1972."  (DSUF Ex. C, ECF No. 88-6.)  Attached to the letter were two questionnaire responses and the operative complaint in the Individual Plaintiffs Lawsuits.  (PSUF ¶ 30.)  On March 11, 2019, Continental requested defense invoices and more information about the claims and lawsuits.  (DSUF ¶ 32; PSUF ¶ 32.)  However, Plaintiffs provided the same two questionnaires and refused to provide any defense invoices.  (DSUF ¶ 33.)

In their September 21, 2018 letter, Plaintiffs requested that Continental defend lawsuits arising out of the natural gas leak, but only described the Individual Plaintiff Lawsuits.  (DSUF Ex. C.)  Furthermore, the letter did not state that allegations in the complaints included claims of damages based on leaks dating back to 1972—only that certain responses to questionnaires indicated so.  (DSUF Ex. C.)  Plaintiffs only provided two questionnaires with such responses from the potential 47,000 plaintiffs involved in the action at the time.  Thus, Plaintiffs failed to meaningfully show a potential for coverage.  Nonetheless, in a series of letters in March and April, Continental agreed to defend against the underlying plaintiffs for whim it had notice of potential coverage.  (DSUF ¶ 35.)  On July 26, 2019, Continental offered to accept its duty to defend against all Individual Plaintiff Lawsuits.  (PSUF ¶ 63.)  Plaintiffs

argue that Continental did not immediately agree to defend upon tender; however, Plaintiffs themselves failed to provide proper notice of potentially covered claims as required by the Harbor Policies and precedential case law.

Furthermore, Continental contends that it was permitted to investigate the suits before defending.  (Reply 10–11.)  California Insurance Regulations provide that an insurer "[u]pon receiving proof of claim, . . . shall immediately, but in no event more than forty (40) calendar days later, accept or deny the claim, in whole or in part."  Cal. Code Regs. tit. 10, § 2695.7(b)(1).  However, if additional time is required, the insurer may make such a request and "specify any additional information the insurer requires in order to make a determination."  Cal. Code Regs. tit. 10, § 2695.7(c)(1).  Here, Continental followed up with Plaintiffs and requested further information.  Given the steady communication between the parties, the Court finds that Continental has not breached its duty to defend.

### b. Duty to Defend in its Entirety

Plaintiffs also argue that Continental breached its obligations by failing to agree to defend the Underlying Lawsuits in their entirety.  As previously stated, "the contractual duty to defend the potentially covered claims immediately and meaningfully implies the prophylactic duty to defend entirely, without pausing to parse among potentially covered and clearly uncovered claims."  *Scottsdale Ins. Co.*, 36 Cal. 4th at 658 (internal quotation marks omitted) (discussing and quoting *Buss*). The Court found earlier that Continental's duty to defend extends to the entirety of the Underlying Lawsuits.

Plaintiffs assert that Continental breached because it did not agree to defend the Underlying Lawsuits.  Although Continental never explicitly agreed to defend all of the Underlying Lawsuits, it never failed to cover any requested payments.  Thus, this scenario is unlike the case where the insurer waited more than two years to accept the tender of defense and nearly three years to begin paying for that defense, resulting in the insurer forfeiting all rights under the policies of insurance.  *See Janopaul + Block*

*Cos. v. Super. Ct.*, 200 Cal. App. 4th 1239, 1248 (2011).  Continental asserts that it timely paid Plaintiffs upon receipt of the defense invoices.  (Reply 10.)

 Here, on August 8, 2019, Continental paid over $1.6 million, about two months after receipt.  (DSUF ¶ 46; Fitzgerald Decl. ¶ 44.)  On September 5, 2019, Continental received a second batch of defense invoices and paid over $1.5 million about a month later in October 2019.  (DSUF ¶¶ 42, 46; Fitzgerald Decl. ¶¶ 43, 44.)  In December 2019, the third batch of defense invoices were sent and paid that month, bringing total defense invoice payments to over $8.2 million.  (Supp. Decl. of John R. Fitzgerald ¶ 12.)[6]  Because Continental has timely tendered payments as requested, the Court does not find that Continental materially breached its duty to defend.  *C.f. The Hous. Grp.*, 193 Cal. App. 4th at 1157 (affirming the district court's finding that the insurer failed to sufficiently agree to defend the underlying suits despite its payments to the insured because it "produced no evidence demonstrating it paid any defense fees or costs during the course of the underlying litigation, and it did not dispute plaintiffs' evidence that no payment of defense fees and costs was made until after settlement.").

 Accordingly, Continental has not materially breached its duty to defend and has not forfeited its right to control the defense.

## C.   Reservation of Rights

 Finally, Plaintiffs argue that Continental's reservation of rights creates a conflict of interest and accordingly, Continental should not be permitted to control the defense. (Opp'n 17–19.)

 On July 26, 2019, Continental agreed to defend the suits against all individual plaintiffs but reserved the rights to assert that: (1) No personal injury or property damage occurred; (2) there was no "occurrence" (accident or event); (3) there was no occurrence or event during the Harbor Policies' periods of coverage; (4) coverage is barred by the policies' pollution and natural gas exclusion; and (5) there is no

---

[6]At the hearing, Plaintiffs argue that Continental has paid $13.5 million of the $15 million requested. Plaintiffs did not assert that Continental refused to pay the remaining.  The Court finds the amount paid to be sufficient performance.

coverage for punitive damages.  (PSUF ¶ 63; DSUF ¶ 36.)  Continental claims that it has since waived the second and fourth reservations.  (DSUF ¶ 53; Fitzgerald Decl. ¶ 40, ECF No. 88-3; Mot. 17.)  Plaintiffs dispute this claim because Continental has maintained its affirmative defenses and counterclaims in this action; however, Continental filed an amended answer and counterclaim in which it waives the defenses so long as it is permitted to take control of the defense of the Underlying Lawsuits.  (Opp'n 18.)  "[Pollution Exclusion] defense is waived as to the Harbor Policies to the extent [Continental] is permitted to take control of the defense of Southern California Gas Company and Sempra Energy against the individual plaintiffs' claims in the Southern California Gas Leak Cases."  (Am. Answer 14, ECF No. 54.)  As the Court has previously determined that Continental may control the defense, as it stands, Continental only presently reserves the rights to assert that no individual raises a claim for personal or property damages from an occurrence within the period of the Harbor Policies.  (Opp'n 18.)  Plaintiffs argue that reservation of these rights creates a conflict of interest.  (Opp'n 18–19.)

In some types of conflict of interest situations, the insurer must provide not only a defense for the insured, but an independent attorney selected by the insured.  *See, e.g., Previews, Inc. v. Cal. Union Ins. Co.*, 640 F.2d 1026, 1028 (9th Cir. 1981).  This is known as *Cumis* counsel, emanating from the California case *San Diego Federal Credit Union v. Cumis Insurance Society, Inc.*, 162 Cal. App. 3d 358 (1984).  *Cumis* was later codified in California Civil Code Section 2860, which clarifies the rights of the insurer in conflict of interest situations.  The statute provides, "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage."  Cal. Civ. Code § 2680(b).  However, a conflict does exist where an insurer "reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim."  *Id*. Thus, the scope of conflicts of interest requiring the provision of independent counsel is narrow.  "Where the reservation of rights is based on coverage disputes which have

1    nothing to do with the issues being litigated in the underlying action, there is no
2    conflict of interest requiring independent counsel." *Fed. Ins. Co. v. MBL, Inc.*, 219
3    Cal. App. 4th 29, 42 (2013).

4         Here, Continental reserves rights unrelated to the Underlying Lawsuits.
5    Continental reserves the rights to assert that no individual raises a claim for personal
6    or property damages from an occurrence within the period of the Harbor Policies.
7    However, this is immaterial to the Underlying Lawsuits, because the pleadings in the
8    Underlying Lawsuits do not succeed or fail based on the time period of the claim.  At
9    the hearing Plaintiffs argue that if Continental agrees that there is a bad facility or that
10   Plaintiffs had knowledge of all of which underlying plaintiffs argue, Plaintiffs would
11   suffer.  First of all, these questions are not encompassed in the reservation Continental
12   preserves.  Additionally, this is immaterial as the success of the Underlying Lawsuits
13   will depend on proof of personal injury or property damages from Plaintiffs' alleged
14   natural gas leak.  Underlying plaintiffs need not ascertain the quality of the facility or
15   Plaintiff's knowledge of such faults to prove injury.  As the reservation is unrelated to
16   the merits of the underlying action, there is no conflict of interest. *Fed. Ins. Co.*, 219
17   Cal. App. 4th at 42.

18        Furthermore, Continental asserts no conflict exists because it has no control
19   over the issue it reserves—timing of the occurrence.  (Reply 11–12.)  Continental
20   cannot control the fact discovery of when the natural gas leaks began, the nature of the
21   damages the underlying plaintiffs faced (e.g., personal or property), or when the
22   underlying plaintiffs began facing the injuries.  Hence, Continental is unable to shape
23   the outcome of the issues it preserves.  In *Federal Insurance Co.*, the court similarly
24   found no conflict of interest where the insurer "provided no evidence to establish how
25   defense counsel could have controlled the issue of *when* certain damages occurred."
26   219 Cal. App. 4th at 47 (emphasis added) ("Defense counsel could not control the
27   facts at issue below, such as when MBL delivered solvents to the drycleaning facility,
28   or when the seepages and resulting environmental contamination occurred.")  Thus,

"it is clear where the coverage issue in question relates only to the timing of damages [as in the issue here], there is no conflict under section 2860." *Id.* at 47; *see Blanchard v. State Farm Fire & Cas. Co.*, 2 Cal. App. 4th 345 (1991). For this additional reason, the Court finds that Continental's reservation of rights does not create a conflict of interest.

## V.    CONCLUSION

The Court finds that, per the terms of the Harbor Policies, Continental owes a duty to defend all Underlying Lawsuits, enjoys the right to control the defense, has not materially breached any term, and poses no risk of conflict of interest. Accordingly, the Court **GRANTS** the motion for partial summary judgment limited to the findings above.


**IT IS SO ORDERED.**


July 20, 2020

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**